UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARGARET WAGNER,                       )
   Plaintiff                           )
                                       )
                                       )
              v.                     ) C.A. NO. 12-cv-30146-MAP
                                     )
BAYSTATE HEALTH, INC.                  )
   Defendant                           )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(Dkt. No. 57)

October 29, 2013

PONSOR, U.S.D.J.

I.   INTRODUCTION

Plaintiff Margaret Wagner, a resident of Holyoke, Massachusetts, is a former employee of Defendant Baystate Health, Inc.  She brought this suit in state court alleging, inter alia, unlawful retaliation under the Family Medical Leave Act ("FMLA").  29 U.S.C. § 2601.  Defendant, a Massachusetts corporation with its principal place of business in Springfield, removed the case to this court and filed a Motion for Partial Summary Judgment on Plaintiff's retaliation claim. (Dkt. No. 57.)  Because there is insufficient evidence to support a finding that Defendant's

proffered legitimate reason for Plaintiff's termination is actually a pretext for retaliation based on her invocation of rights under the FMLA, Defendant's Motion for Partial Summary Judgment will be allowed.  The court will, however, utilize its discretion to retain supplemental jurisdiction over the remaining state law claims and set the case for a final pretrial conference.

## II.  FACTS[1]

Plaintiff Margaret Wagner began working for Defendant in February 2004 as a per diem lab assistant.  By 2006, she had been promoted to Lead Lab Assistant in the Reference Lab, which is the job she held at the time of her termination.  In this position, Plaintiff was responsible for overseeing the lab during her shift.  For the majority of 2006-2009, she reported to the Manager of Accessioning, JoAnne Palmer.  For a brief period in 2008, her supervisor was Sharon Perry.  From December 2009 until her termination in December 2010, Plaintiff reported to Lisa Piepul,

---

[1] The facts, unless otherwise noted, are drawn from Defendant's Statement of Material Facts, (Dkt. No. 59), and Plaintiff's Counter Statement of Material Facts (Dkt. No. 65).

Supervisor of Accessioning, who, in turn, reported to Palmer.

In 2007, Plaintiff began to receive mixed performance evaluations. She was given an opportunity to view each one, and signed an acknowledgment to that effect. Although there was substantial positive feedback, the evaluations also expressed concern over her interpersonal skills, her ability to accept criticisms, and her attitude in dealing with difficult situations. In the 2007 evaluation, Palmer also wrote that Plaintiff needed to be "calm and collected when challenged." (Dkt. No. 59, Ex. 6.)

In the 2008 evaluation, Perry noted that Plaintiff needed to address comments or concerns directly to her coworkers or supervisors, rather than discussing them with staff. (Dkt. No. 59, Ex. 7.) The evaluation recommended that she "maintain a professional and calm demeanor when talking with staff, lead, and superiors, especially when having difficult conversations." (Id.)

In 2009, the evaluation was harsher. Palmer wrote that "Margaret needs to treat all contacts with respect, being mindful of her demeanor in all settings . . . . Some staff

report that she is sometimes abrupt." (Dkt. No. 59, Ex. 8.) Palmer indicated that Plaintiff had inappropriately shared information about a patient with a coworker. (<u>Id.</u>) That year, Plaintiff was also interested in a promotion. Palmer told Plaintiff that she would not be considered for this because of a previous interpersonal conflict Plaintiff had with another employee. (Dkt. No. 59, Ex. 1 at 28-31.)

A number of employees began to complain about Plaintiff to Palmer in 2009. This included Jennifer Peloquin, Tiffany Tranghesy, and Emily Moccio. (Dkt. No. 59, Ex. 2 at 22-23.) Moccio, for instance, said she felt Plaintiff was unfair in her assignments, made the work environment very uncomfortable, and whispered and talked privately while staring at Moccio and other employees. (Dkt. No. 59, Ex. 9.)

In July 2010, Plaintiff left work for a vacation. The parties dispute what occurred when she returned. Defendant claims that on July 14, 2010, supervisor Piepul told Plaintiff that she needed to distribute extra hours fairly and needed to move staff around more to avoid favoritism. (Dkt. No. 59, Ex. 3 at 28.) Plaintiff claims that this

issue was not discussed until she returned from her later FMLA leave.  (Dkt. No. 65, Ex. 6.)  For purposes of the court's ruling this dispute bears on no dispositive facts.

The next month, Plaintiff believed that four employees under her supervision had violated the company's sexual harassment policies.  As a result, she reported them by calling the company's compliance hotline and by speaking with her supervisor.  Following this incident, Plaintiff contends, her supervisor became distant, and their relationship changed.

On September 1, 2010, Plaintiff took FMLA leave for disc replacement surgery in her neck.[2]  While Plaintiff was on leave, employees continued to complain about the work environment created by Plaintiff.  After Plaintiff returned to work on October 12, she met with Palmer to discuss issues with teamwork and problems related to scheduling.

Following that discussion, an "environmental scan," or evaluation of the office, was conducted by the Human Resources Department to evaluate problems in the lab.

---

[2] Plaintiff was also granted a second FMLA leave, but did not use it.

Numerous findings reflected unfavorably on Plaintiff. These included her failure to encourage teamwork, her "negative tone," her favoritism, and what some employees characterized as "bullying." (Dkt. No. 59, Ex. 14.)

Plaintiff's behavior thereafter continued to be problematic. Plaintiff disregarded a "trial" change in office policy and actively discouraged employees from participating in it. Plaintiff also failed to complete part of her work assignments and was disrespectful to her coworkers. In response to this, it is undisputed that on November 23, 2010, in accordance with Baystate Policy, Defendant issued Plaintiff a Final Written Warning for Insubordination ("FWW"). The FWW included a Performance Improvement Plan ("PIP") that set forth specific requirements for Plaintiff to follow to improve her behavior. Failure to conform to the PIP was a ground for termination. Plaintiff acknowledges the FWW and PIP, but she disputes the reasons underlying them. Again, the dispute with regard to the underlying reasons is not dispositive.

On November 29, 2010, Plaintiff provided Jo-Ann Davis,

Director of Human Resources Consulting and Employee Relations, a draft copy of a complaint Plaintiff had prepared to file with the Massachusetts Commission Against Discrimination ("MCAD").  On December 1, Plaintiff filed the complaint with the MCAD, alleging retaliation for reporting sexual harassment and taking FMLA leave.  On December 6, Defendant determined that Plaintiff's behavior had not improved and suspended Plaintiff.  On December 8, Plaintiff was terminated.

Plaintiff claims that the termination was the result of taking FMLA leave and reporting her co-workers' sexual harassment.  Defendant contends that there was a pattern of behavior on Plaintiff's end that warranted the action. Plaintiff has brought suit for retaliation under the FMLA, retaliation under Mass. Gen. Laws ch. 151B, § 4 for reporting sexual harassment, and retaliation under Mass. Gen. Laws ch. 151 for filing a complaint with the MCAD and taking FMLA leave.  As noted above, the only issue raised by the Motion for Partial Summary Judgment is Plaintiff's claim for retaliation under the FMLA.

### III.  DISCUSSION

A.  <u>Partial Summary Judgment</u>

As with all Rule 56 motions, partial summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; <u>Reich v. John Aldern Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997).  The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences from those facts in that party's favor.  <u>Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588 (1st Cir. 2004).

In the absence of direct evidence, the familiar three-step <u>McDonnell Douglas</u> framework applies to retaliation claims under the FMLA.  <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 160-61 (1st Cir. 1998).  First, a plaintiff must establish a <u>prima</u> <u>facie</u> case of retaliation.  <u>Id.</u> at 161.  Once established, the burden of production shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse employment action.  <u>Id.</u>  If the defendant successfully meets its burden, the ultimate burden of persuasion rests with the plaintiff to prove that the proffered reason is a pretext for retaliation.  <u>Id.</u>

A prominent issue in this case is whether temporal proximity of an adverse employment action to a statutorily protected activity (here, Plaintiff's invocation of FMLA rights), without more, is sufficient for Plaintiff to make out her prima facie case of retaliation.  If it is, or at least can be, the next question becomes whether the close sequence of events is enough to establish that an alleged, legitimate reason for the termination was a pretext for retaliation.  While Plaintiff takes issue with this characterization of the case, she has failed, in her briefs and at oral argument, to present any significant independent evidence supporting her claim of FMLA retaliation.[3]  As the analysis below demonstrates, although Plaintiff's allegations are enough to move her past the prima facie

---

[3] Plaintiff relies on three pieces of evidence: first, the short interval between her FMLA leave and her termination; second, the failure of Defendant to penalize Plaintiff before her FMLA leave; and, third, the supposed unreliability of some of Defendant's witnesses since they were the same employees Plaintiff accused of sexual harassment.  The first two pieces of evidence speak to the proximity of the protected activity and the adverse employment action.  The third, while potentially bearing on general credibility, is more directly relevant to Plaintiff's claim for retaliation based on her reporting of sexual harassment and is insufficient to carry Plaintiff through the final stage of the FMLA retaliation analysis.

threshold, they are not enough to paint Defendant's explanation as pretext.

1. **Plaintiff's Prima Facie Case of Retaliation.**

To establish a prima facie case of retaliation, a plaintiff must show: (1) that the plaintiff exercised a protected right; (2) an adverse employment action was taken against the plaintiff; and (3) there is a causal connection between the employee's protected activity and the adverse employment action. Id.

There is no question that Plaintiff satisfies the first two requirements. She clearly exercised a protected right in taking FMLA leave, and her termination serves as an adverse employment action.[4] The central inquiry here is whether Plaintiff has met her third requirement, or, more concretely, whether temporal proximity between a protected right and an adverse action, without more, satisfies this

---

[4] While the parties agree that Plaintiff's termination was an adverse employment action, they disagree over whether it was the only one. Specifically, they diverge over whether the FWW and PIP also constituted an adverse action. The law is not clear on this question. Compare Billings v. Town of Grafton, 515 F.3d 39 (1st Cir. 2008), with Bhatti v. Trustees of Boston Univ., 659 F.3d 64 (1st Cir. 2001). The court will assume for purposes of this motion that the FWW and PIP were adverse employment actions.

element.

The prima facie requirement is a low bar to overcome, and case law suggests that temporal proximity may, at least in some instances, be sufficient to carry a plaintiff's case over it.  However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(four-month period insufficient).

In this circuit, a close relationship between the time of the protected activity and the adverse action is "strongly suggestive of retaliation." Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988)(citation omitted).  Both a one-month and two-month interval between a protected activity and adverse action have been classified

as "close enough" to imply retaliation for purposes of the prima facie case. See Mariani-Colon v. Dep't Homeland Sec. ex. rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007)(two-month period sufficient); Caleo-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004)(one-month period sufficient); contra Furtado v. Standard Parking Co., 820 F. Supp. 2d 261, 273 (D. Mass. 2011)(one-year period insufficient).

In this case, Plaintiff was reprimanded six weeks after she returned from FMLA leave, and was terminated two weeks after that. This timing is close enough to suggest a retaliatory motive as a preliminary matter. A reasonable jury, looking solely at the sequence of events -- without any responsive explanation by Defendant -- could conclude that Defendant unlawfully retaliated against Plaintiff. Therefore, at this stage of the analysis, Plaintiff has established a prima facie case and the burden of production shifts to Defendant.

   2.   Defendant's Legitimate, Non-Retaliatory Reason.

Once a plaintiff has established a prima facie case of retaliation, the burden of production shifts to the

defendant to offer a legitimate, non-retaliatory reason for the adverse action. Hodgens, 144 F.3d at 160-61. This, too, is a fairly low threshold. Espinal v. Nat'l Grid NE Holdings 2, LLC, 794 F. Supp. 2d 285, 292 (D. Mass. 2011). Defendant need only put forth some evidence that the adverse action occurred for a legitimate reason. See e.g., Clay v. City of Chicago Dep't of Health, 143 F.3d 1092, 1094 (7th Cir. 1998)(finding the defendant's evidence of the plaintiff's poor performance, which included grievances, co-employee testimony, and evaluations, enough to meet this burden).

Defendant has presented more than enough evidence to satisfy its burden at this stage. First, Defendant has pointed to a documented pattern of increasingly negative performance evaluations, beginning in 2007 and becoming more serious as time progressed. This evidence undermines any argument that Defendant has fabricated a post-hoc justification for its actions.

Second, Defendant has a coherent explanation for the timing of events. Defendant relies on the testimony of other employees who complained about Plaintiff's behavior.

Several of the employees testified in their depositions about their problems with Plaintiff. When those complaints intensified, Defendant conducted an "environmental scan" of the department and attempted to work with Plaintiff to improve her behavior. Plaintiff's continuing poor performance provides a fair explanation for Defendant's decision to reprimand and ultimately terminate Plaintiff.

Significantly, the court's analysis does not change if Plaintiff is correct in her claim that some of her fellow employees were concocting stories about her because they resented her reporting them for sexual harassment. The undisputed fact that a substantial number of Plaintiff's co-workers were <u>reporting</u> their unhappiness with Plaintiff's conduct on the job provides material support to Defendant's proffered justification for its decision to terminate Plaintiff. <u>Ahmed v. Berkshire Med. Ctr., Inc.</u>, No. CIV. A. 94-30250-FHF, 1998 WL 157016, *7 (D. Mass. 1998). Defendant's reliance on those complaints, even recognizing that Plaintiff now disputes them, is sufficient to demonstrate a <u>bona</u> <u>fide</u> basis for its adverse employment action.

In sum, Defendant has assembled a significant record detailing a suitable explanation for its actions. As such, it has met its burden of production at the second stage of the analysis, and the burden shifts back to Plaintiff.

3. <u>Pretext.</u>

Once a defendant has met its burden of production, the ultimate burden of persuasion shifts back to the plaintiff. To survive summary judgment, a plaintiff must provide evidence raising a genuine issue of material fact as to whether the defendant's legitimate, non-retaliatory reason was a pretext for retaliation. At this point of the analysis, the presumption of retaliation no longer exists. <u>Henry v. United Bank</u>, 686 F.3d 50, 56 (1st Cir. 2012).

A plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248 (1981). To show pretext directly, a plaintiff will typically rely on a statement by a decision-maker demonstrating retaliatory motive or evidence that other

similarly situated employees were not sanctioned. See Colburn v. Parker Hannifan/Nichols Portland Div., 429 F.3d 325, 338 (1st Cir. 2005).

Here, the record contains no such direct evidence, and Plaintiff's indirect evidence of temporal proximity, even if satisfactory for Plaintiff to establish her prima facie case, is not enough, without more, to show pretext. As the Fifth Circuit has aptly stated,

> Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation . . . . However, once the employer offers a legitimate, non-discriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.

Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). The First Circuit has found, on at least two occasions, a temporal connection adequate for the prima facie case, but inadequate on this final stage. See Henry, 686 F.3d at 57 (noting that the timing needs to be overwhelmingly suggestive of a non-retaliatory reason to prove pretext); Calero-Cerezo, 355 F.3d at 25-26. Unless the timing speaks for itself, this requirement makes sense.

Once a defendant has offered an acceptable explanation for the sequence of events, a plaintiff needs to provide some evidence to explain why that explanation is invalid.

The timing here, at least at the third stage of analysis, has negligible probative value.  Although the adverse action did occur after Plaintiff's FMLA leave, the surge of negative reports about Plaintiff and her failure to respond to the warning and performance improvement plan offer an explanation for why the termination occurred when they did.  The timing <u>alone</u>, especially given this explanation, does not suggest retaliation.  For Plaintiff to establish pretext here, she needed to provide evidence that directly or indirectly implied a retaliatory motive.  Here, the record reveals no such evidence.  Without any basis beyond timing, a reasonable jury simply could not find that Defendant's explanation constitutes a pretext for retaliation based on her invocation of her FMLA rights.

Ultimately, though Plaintiff succeeds in establishing a <u>prima facie</u> case, she cannot overcome Defendant's legitimate, non-retaliatory explanation.  As a result, there is no genuine issue of material fact, and summary judgment

in Defendant's favor on this claim is appropriate.

B.   <u>Remaining State-Law Claims</u>

Once there is no claim over which a federal court would have original jurisdiction, it is within that court's discretion to determine whether to retain supplemental jurisdiction over the remaining state-law causes of action. 28 U.S.C. § 1367(c)(3); <u>Carslbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009).  In making this determination, a court should consider "the interests of fairness, judicial economy, convenience and comity." <u>Camelio v. Am. Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998).

These factors make it clear that the remaining state-law claims should be retained for trial.  First, the parties have completed discovery and are essentially ready for trial on the remaining claims.  Dismissing the case at this point would cause needless delay.  Second, this court is now sufficiently familiar with the matter that it is in the interest of judicial economy to retain it.  Finally, as a matter of fairness, Plaintiff is entitled to her day in court.  Plaintiff originally filed this case in state court. Defendant removed the case to this court but is now seeking

to return to the original forum.  It would be unfair to Plaintiff to allow Defendant to play ping-pong with the case in this way.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Dkt. No. 57) is hereby ALLOWED. The court will retain supplemental jurisdiction over the remaining state-law claims.  The clerk will now schedule the case for a final pretrial conference on those remaining issues.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge